IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACCENTCARE, INC., and ACCENTCARE OF CALIFORNIA, INC., <br><br>  Petitioners, <br><br> v. <br><br> EBONY JACOBS, <br><br>  Respondent. | No. C 15-03668 JSW <br><br> **ORDER DENYING PETITIONERS' PETITION TO COMPEL INDIVIDUAL ARBITRATION; GRANTING RESPONDENT'S MOTION TO COMPEL ARBITRATION; AND VACATING HEARING** <br><br> Docket Nos. 1, 23, 24, 25 |

Now before the Court is the petition to compel individual arbitration filed by Petitioners AccentCare, Inc. and AccentCare of California, Inc. (collectively, "Petitioners") (Docket Nos. 1, 23, 24) and the motion to compel arbitration filed by Respondent Ebony Jacobs ("Respondent") (Docket No. 25). The Court finds this matter suitable for disposition without oral argument and VACATES the hearing set for November 13, 2015. *See* N.D. Cal. Civ. L.R. 7-1(b). Having carefully reviewed the parties' papers and considering their arguments and the relevant authority, the Court DENIES Petitioners' motion and GRANTS Respondent's motion for the reasons set forth below.

**BACKGROUND**

On July 13, 2015, Respondent filed a demand for class arbitration. (Ex. 2 to Petition.) The demand for arbitration is made on behalf of Respondent and a putative class of persons who, during the alleged limitations period, were allegedly employed by Petitioners as "in-home Care Partners" and required to work 24-hour shifts while only being paid for 16 hours of those shifts.

Petitioners allege that Respondent was employed by AccentCare of California, Inc., as an in-home Care Partner from October 26, 2011 to December 14, 2012, and again from July 24, 2013

through the present.  (Petition ¶ 2.)  On July 24, 2013, Respondent signed an arbitration agreement that provides: "[t]o the fullest extent allowed by law, any controversy, claim or dispute between Employee and the Company . . . relating to or arising out of Employee's employment or the cessation of that employment . . . will be submitted to final and binding arbitration in the county in which Employee work(ed) for determination in accordance with the American Arbitration Association's ("AAA") National Rules for the Resolution of Employment Disputes, as the exclusive remedy for such controversy, claim or dispute."  (Exh. 1 to Petition, Hanson Decl., Exh. A, ¶ 2.)  The arbitration agreement further provides that it "is to be construed as broadly as is permissible under applicable law."  (*Id.*)

On August 11, 2015, Petitioners filed in this Court a petition to compel arbitration.  Petitioners contend that only individual arbitration proceedings, as opposed to class-wide arbitration proceedings, are authorized by the arbitration agreement.  On September 21, 2015, Respondent countered with a motion to compel arbitration, contending that the arbitrator, not the Court, should resolve the question of whether the arbitration agreement contemplates class arbitration.

The Court shall address additional facts as necessary to its analysis in the remainder of this Order.

**ANALYSIS**

**A.     Applicable Legal Standards.**

Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Once the Court has determined that an arbitration agreement involves a transaction involving interstate commerce, thereby falling under the FAA, the Court "must issue an order compelling arbitration if the following two-pronged test is satisfied: (1) a valid agreement to arbitrate exists; and (2) that agreement encompasses the dispute at issue."  *United Computer Systems v. AT&T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002); *see also* 9 U.S.C. §§ 2, 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

The FAA represents the "liberal federal policy favoring arbitration agreements," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses*

2

*H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  Under the FAA, "once [the Court] is satisfied that an agreement for arbitration has been made and has not been honored," and the dispute falls within the scope of that agreement, the Court must order arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967).  The "central purpose of the [FAA is] to ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995) (quotation omitted).  The "preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, a concern which requires that [courts] rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* 473 U.S. 614, 625-26 (1985) (quotations omitted).

"The question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). However, "the phrase 'question of arbitrability' has . . . a limited scope." *Id.*  It is "applicable in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." *Id.* at 83-84.  On the other hand, "procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." *Id.* at 84; *see also Prima Paint*, 388 U.S. at 404 (holding that "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate").

**B.    The Motions to Compel Arbitration.**

The parties in this case do not dispute that there is a valid arbitration agreement or that Respondent's individual claims fall within the scope of that agreement.  Rather, the parties dispute whether the arbitration may proceed on a class-wide basis and whether the Court or the arbitrator shall make this determination.  "Neither the Supreme Court nor the Ninth Circuit has explained definitively when the availability of class-wide arbitration might be a question for a court and when

it might be a question for an arbitrator." *Vazquez v. ServiceMaster Global Holding Inc.*, No. C 09-05148 SI, 2011 WL 2565574, *3 (N.D. Cal. June 29, 2011). A plurality of four Justices in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452-53 (2003), opined that this question is a matter of contract interpretation and arbitration procedure and, thus, is one for the arbitrator. *See also id.* at 455 (Stevens, J., concurring in judgment but agreeing only that the question is "[a]rguably" for the arbitrator). The Supreme Court clarified in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 679 (2010), that "*Bazzle* did not yield a majority decision" and that the question of whether the Court or the arbitrator should make this determination remains open.

The Supreme Court has explained that "[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (internal citations omitted). Absent "clear and unmistakable evidence" that the parties intended to arbitrate arbitrability, the Court should not presume that intention. *Id.* at 944 (alterations omitted). Moreover, if an arbitration agreement is silent or ambiguous about who should decide arbitrability, the question should be put to the Court because to do otherwise "might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *Id.* at 945.

In this case, the Court need not determine whether the availability of class-wide arbitration is a matter of contract interpretation and arbitration procedure or is a question of arbitrability. Even if it is a question of arbitrability, the Court finds that there is clear and unmistakable evidence that the parties intended arbitrability to be determined by the arbitrator. *See id.* at 944-45.

The Parties incorporated the AAA rules into the arbitration agreement. The Ninth Circuit recently held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."); *see also AccentCare, Inc. v. Echevarria*, No. 15-cv-01078-JSW, at *5

4

(Order Regarding Motion to Compel Individual Arbitration, June 1, 2015) ("*Echevarria*") (citing cases). Although *Brennan* and *Oracle America* were not in the context of disputes about the availability of class arbitration, they are persuasive.

District courts have emphasized the importance of the specific provisions of the AAA rules that are incorporated by the arbitration agreement. *Compare Yahoo! Inc. v. Iverson*, 836 F. Supp. 2d 1007, 1012 (N.D. Cal. 2011) ("[T]he incorporation by reference of the AAA Supplementary Rules as they existed at the time [the parties] entered into their contract constitutes a clear and unmistakable agreement to have the arbitrator decide questions regarding the arbitrability of class-wide claims.") (quotation omitted), *with Tompkins v. 23and Me, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, *10 (N.D. Cal. June 25, 2014) (finding no clear and unmistakable evidence where "[t]he AAA maintains multiple sets of rules for different types of disputes" and the relevant arbitration agreement "does not identify any of these specific rules").

Here, the arbitration agreement incorporates the AAA's National Rules for the Resolution of Employment Disputes. (Exh. 1 to Petition, Hanson Decl., Exh. A, ¶ 2.) These rules provide that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Employment Arbitration Rules, Rule 6.[1] This is exactly the same rule that the Ninth Circuit found in *Brennan* to constitute clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability, which strongly supports Respondent's position. Additionally, the AAA Supplementary Rules for Class Arbitration "apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the" AAA. AAA Supplementary Rules for Class Arbitration, Rule 1(a). The Supplementary Rules provide that "the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class." AAA Supplementary Rules for Class Arbitration, Rule 3. Accordingly, the specific AAA Rules that are incorporated into the arbitration agreement at issue in this case constitute a clear and unmistakable agreement to have the arbitrator decide questions regarding the arbitrability of class-wide claims.

---

[1] The AAA Rules are available at https://www.adr.org/.

In *Brennan*, the Ninth Circuit noted that its holding "should not be interpreted to require that the contracting parties be sophisticated or that the contract be 'commercial' before a court may conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent." 796 F.3d at 1130. However, the court limited its holding to the facts with which it was presented: an employment contract between sophisticated parties. It did not reach the effect, if any, of incorporating AAA arbitration rules into consumer contracts or into contracts of any nature between unsophisticated parties. *Id.* at 1131.

To the extent the effectiveness of delegating arbitrability through incorporation of AAA rules is limited to sophisticated parties, such a limitation would not assist Petitioners. The Court notes that Petitioners are the companies that employed Respondent and drafted the arbitration agreement at issue. Petitioners allege that they employed no fewer than 1,000 individuals during the putative class period. (Petition at ¶ 16.) Petitioners are not uninformed, unsophisticated consumers. Nor is this a consumer contract; as in *Brennan*, the contract at issue is an employment contract.

Therefore, the Court finds that the question of arbitrability may be, and was, delegated to the arbitrator by the incorporation of the AAA rules. Accordingly, the arbitrator, not the Court, shall determine whether the arbitration agreement allows class-wide arbitration.

## CONCLUSION

For the foregoing reasons, the Court DENIES Petitioners' motion to compel individual arbitration (Docket Nos. 1, 23, 24). The Court GRANTS Respondent's motion to compel arbitration, which contends that the arbitrator should resolve the question of whether the arbitration agreement contemplates class arbitration (Docket No. 25).

The case management conference set for January 15, 2016 at 11:00 a.m. remains on calendar.

**IT IS SO ORDERED.**

Dated: November 9, 2015

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE